UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              ) Civil Action No. 05-10972-NG
        V.                  )
                              )(Criminal No. 98-10185-NG)
CHARLES WILKERSON           )


GOVERNMENT'S REPLY TO
DEFENDANT'S PETITION PURSUANT TO SECTION 2255

On December 17, 2001, Charles Wilkerson was sentenced by the Court to 120 months' imprisonment, the mandatory minimum sentence, upon his conviction for distributing more than 5 grams of crack cocaine.[1] The defendant appealed claiming the government improperly failed disclose exculpatory impeachment information concerning witness Steven Williams and that the Court should have departed downward based on family circumstances. The First Circuit rejected these claims and affirmed his conviction in an unpublished opinion filed December 31, 2002. The Supreme Court denied the defendant's petition for a writ of certiorari on May 8, 2003.

The instant petition seeking relief pursuant to 28 U.S.C. § 2255 was filed on May 4, 2005, nearly two years after the defendant's conviction became final. The petition raises two grounds for relief, the same grounds that were raised in his

---

[1] The defendant's sentence was enhanced to a 10 year mandatory minimum because of an information filed pursuant to 21 U.S.C. 851.

appeal.  First, he says the Court should have granted him a new
trial based on the government's failure to disclose allegedly
exculpatory evidence concerning cooperating witness Steven
Williams.  Second, the defendant claims that the Court erred by
failing to recognize its authority to depart based on
extraordinary family circumstances.

These claims do not warrant the relief sought.  The claims
are untimely, they have been previously raised and rejected, and
they are not cognizable claims pursuant to 2255.  Moreover, even
on the merits, the claims utterly fail to establish a basis for
relief.  Accordingly, the petition should be dismissed without a
hearing.

**Facts**

*Procedural History*

The defendant, Charles Wilkerson ("Wilkerson"), was
convicted on October 29, 1999 by a jury of selling an ounce (28
grams) of crack cocaine to Steven Williams, who was at the time
working under the supervision of law enforcement. Before
sentencing, Wilkerson moved for a new trial and the Court granted
the motion, finding that the Court improperly excluded
impeachment evidence of Williams.  The government appealed and
the First Circuit reversed, finding the error, if any, was
"unmistakably harmless."  United States v. Wilkerson, 251 F.3d
273 (1st Cir. 2001).  The Court found that the excluded evidence

2

(a seven-year old arrest for receipt of stolen tires) was cumulative because there was already substantial impeachment evidence in the case, and because "the evidence against Wilkerson was strong." Id.

On remand, Wilkerson filed a second motion for new trial, alleging that certain newly-discovered impeachment material concerning Steven Williams (including the grand jury testimony relied upon in the instant petition) warranted a new trial. The government responded and, after a hearing, the Court denied the motion, holding, "[n]othing about these issues affects the First Circuit's "findings" on harmless error, which binds this court."

At sentencing on December 17, 2001, the Court departed downward and sentenced Wilkerson to 120 months in prison, which was the statutory mandatory minimum applicable to Wilkerson's drug trafficking crime. United States v. Wilkerson, 183 F.Supp.2d 373, 375 and 378 (D.Ma. 2002).

On appeal, Wilkerson raised the Brady issue concering Williams and the departure claim. The First Circuit rejected the arguments and denied Wilkerson's appeal. The Supreme Court subsequently denied his petition for certiorari.

Additional facts about the case are set forth, as needed, below.

*Offense of Conviction*

The facts of the offense were detailed in the First

Circuit's decision in the government's appeal.  <u>United States v.</u>

<u>Wilkerson</u>, 251 F.3d 273 (1st Cir. 2001).  The facts are not

challenged in Wilkerson's petition.  After a careful review of

the record, the First Circuit found:

> The second sale on July 8, 1997,
> involving approximately one ounce of cocaine,
> was made to cooperating witness Steven
> Williams, who had an audio transmitter and
> $400.  Williams was enlisted to purchase
> cocaine from Castlegate gang member Shawn
> Mells, also known as "Smiles."  DEA Task
> Force Agent Joao Monteiro assisted in the
> transaction, driving Williams to Blue Hill
> Avenue and Castlegate Road in an undercover
> vehicle.
>
> At the time Williams attempted to
> contact Mells, he initially approached Thomas
> Hargrove, also known as "Buzz." When Williams
> asked to arrange a purchase, Hargrove called
> up to a third floor apartment and told an
> unidentified female to get "Smiles" or
> "Chuck" for the transaction.  Williams
> checked in with Monteiro at the undercover
> vehicle and then proceeded up Blue Hill
> Avenue with Hargrove.  Williams met with the
> dealer, who was driving a blue Toyota.
> Although neither Monteiro's observation nor
> the audiotape of the conversation resulted in
> an identification of Wilkerson as the
> individual in the car, Williams identified
> the dealer as Charles Wilkerson, whom he knew
> previously and indeed greeted on the
> audiotape with familiarity, referring to him
> as "Chuck" during the exchange.  "Chuck"
> indicated that he would return in twenty
> minutes with the agreed amount of crack
> cocaine, one ounce in exchange for $800.
>
> Twenty minutes later, Hargrove assured
> Williams that "Chuck" would come by shortly.
> When the blue Toyota returned, accompanied by
> a green Toyota, Williams says he saw the
> defendant in the green car.  He entered that
> vehicle, and they then drove a couple of
> blocks to complete the transaction.
> Monteiro followed in his car.  When the

> purchase was completed, Williams asked how he
> could contact "Chuck" about future deals.    A
> piece of paper was passed, with the name
> "Chuck" and two phone numbers written on it.
> One of these numbers proved to be a cell
> phone number subscribed to by the defendant.
> Williams's account of events is corroborated
> by Monteiro's observation (though he could
> not identify the defendant), the audiotape of
> the transaction obtained from the wire worn
> by Williams, and a videotape of the scene
> made from a small, concealed camera on the
> undercover vehicle.

Wilkerson, 251 F.3d at 275-76.

Regarding the cross-examination of Williams, the Court found:

> On count two, Williams was a crucial
> witness, and the defense's cross-examination
> involved several exchanges intended to
> undermine his credibility.    First, the
> defense questioned Williams about his
> agreement to cooperate with the DEA, and the
> approximately $12,000 and other benefits he
> had received over a two-year period for this
> cooperation.    He was questioned about his
> prior history of dealing drugs;  his failure
> to file income tax returns;  and his
> convictions for assault and battery of a
> police officer and improper attachment of a
> motor vehicle plate.    Over the objection of
> the government, the defense also asked him
> about two default warrants from 1993 and 1994
> for failure to return leased property.  He
> acknowledged a conviction on this charge as
> well.

251 F.3d at 276.

In finding harmless the district court's exclusion of

impeachment evidence suggesting that Williams was arrested for

receipt of stolen tires, the Court found:

> Although the excluded evidence was offered to
> further impeach Williams's credibility, there

was already substantial impeachment evidence
in the case. The cross-examination had
included Williams's past drug-dealing
activities, his history of tax evasion, and
his convictions for assault on a police
officer, illegal attachment of a license
plate and failure to return leased property.
Defense counsel also had the opportunity to
explore Williams's relationship with the
government, including the DEA's payment for
his services as a cooperating witness.
Williams's history with members of the
Castlegate gang was also explored.  At best,
the excluded evidence was cumulative.
Admission of the additional charge regarding
receipt of stolen property in 1992 is not
likely to have altered the jury's assessment
of the witness's credibility.

Furthermore, the evidence against Wilkerson
was strong.  While it is true that Williams
is the only witness who identified Wilkerson
as the distributor, other evidence
corroborates his account.  Agent Monteiro
witnessed the entirety of Williams's crack
cocaine purchase and supports Williams's
report of the transaction.  Both video and
audiotapes of the transaction also match
Williams's testimony.  Finally, one of the
phone numbers "Chuck" provided to arrange
future drug purchases matches Wilkerson's
registered cell phone number.  In light of
this evidence, and the impeachment evidence
already in the case, it is highly probable
that the exclusion of one seven-year-old
charge for receipt of stolen property from
the cross-examination of Williams did not
contribute to the verdict, *see United States
v. Rodriguez Cortes,* 949 F.2d 532, 543 (1st
Cir.1991), and hence the error, if any, was
harmless.  The motion for a new trial should
not have been granted.

Id. at 280.

   *Remand*

     On remand, Wilkerson again moved for a new trial. In a

motion filed on June 21, 2001, Wilkerson alleged that "newly

discovered" impeachment evidence of Steven Williams warranted a

new trial. The government filed a response and, on September 14,

2001, this Court summarily denied the motion without a hearing,

holding:

> Nothing about these issues affects the First
> Circuit's 'findings' on harmless error, which
> binds this court.

On November 14, 2001, Wilkerson filed a sentencing

memorandum urging that the Court depart downward from the

undisputed guideline range of 140 to 175 months.[2]  Wilkerson

argued that a departure was justified on a number of grounds,

including his allegedly extraordinary family circumstances and

the fact that, in his view, his criminal history score over-

represented the seriousness of his criminal conduct.  The

government opposed a downward departure.

At the sentencing hearing on December 17, 2001, the Court

concluded it did not have the authority to grant a departure on

---

[2]  Wilkerson also sought to challenge the 10-year mandatory
minimum sentence, which applied to Wilkerson because the offense
involved more than five grams of cocaine base and because the
government filed proper notice that Wilkerson had been convicted
in 1993 in Dorchester District Court of possession with intent to
distribute a Class B substance and conspiracy to violate the
controlled substances act.  21 U.S.C. §§841(b)(1)(B) and 851(a).
The district court denied his challenge and Wilkerson did not
renew that claim on appeal or in this petition.

Wilkerson also moved to vacate the conviction in state
court, which denied the motion. Commonwealth v. Wilkerson, 437
Mass. 1103, 772 N.E.2d 588 (Mass. 2002).

the ground that Wilkerson had a "horrible childhood."
Nevertheless, the Court concluded that Wilkerson's criminal
history score over-represented the seriousness of his prior
criminal conduct and departed downward to 120 months, the 10-year
statutory minimum applicable to Wilkerson's conviction.
Specifically, 21 U.S.C. §§841(b)(1)(B) and 851(a) provide for a
10-year mandatory sentence for offenses involving more than five
grams of cocaine base where the defendant has a prior felony drug
conviction and the government files an information specifying the
conviction before trial.  Here, Wilkerson had a qualifying prior
conviction, and the government had filed the requisite §851
information.  The Court, then, had departed as far as it could
depart under the guidelines.

**Discussion**

   *Timeliness*

   Both of the defendant's claims are time barred.  Section
2255 provides a one year limitations period within which a motion
must be filed.  The limitations period runs from the date on
which the judgment of conviction becomes final, absent other
circumstances not presented here.  Wilkerson's conviction became
final on May 8, 2003.  The instant petition was filed May 4,
2005. Thus, his motion is untimely and must be dismissed. Derman
v. United States, 298 F.3d 34, 40 (1st Cir. 2002)("The one-year
period for filing a petition challenging a federal court

conviction . . . begins to run from and after 'the date on which the judgment of conviction becomes final'").

*Bar Against Relitigation*

Absent exceptional circumstances not presented here, a claim actually decided on direct review cannot be relitigated under Section 2255. Withrow v. Williams, 507 U.S. 680, 720-721; Argencourt v. United States, 73 F.3d 14, 16 n.1 (1st Cir. 1996). Both of these claims were previously presented to this Court and the First Circuit and were rejected.

*Cognizable Claims*

Section 2255 does not offer relief for "all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). Instead, § 2255 furnishes limited relief only in a case of "fundamental defect which inherently results in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). Petitioner does not present a case for such relief.  In particular, claims of error under the Sentencing Guidelines are generally not cognizable on Section 2255. Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994).

Finally, even if decided on the merits, there is no basis for relief.

*Exculpatory Evidence*

Wilkerson claims that the government failed to disclose that Steven Williams committed perjury before the grand jury and was a

member of the Franklin Hill Giants.

Prior to trial, the  government disclosed the January 30, 1997 grand jury testimony of Steven Williams concerning his testimony in the Castlegate investigation.[3]  In disclosing the grand jury transcript, the government redacted testimony concerning a then ongoing investigation of a different gang called the Franklin Hill Giants.[4]  In the portion of the testimony that was disclosed, Williams, who was 22 years old at the time, testified that he grew up in the Franklin Hill projects.  He gave confused answers about his prior drug use and dealing:

> Q:    Mr. Williams, have you ever used drugs?
> A:    No, I haven't.
> Q:    Did you ever use marijuana?
> A:    Yes, I have used marijuana once.
> Q:    Okay.  When was that?
> A:    This is a couple of years ago.
> Q:    Okay.  Did you ever use any other
>       controlled substance?
> A:    No.
> Q:    Okay.  Did you, did you ever sell any
>       controlled substance?
> A:    No. I –
> Q:    Any controlled substance.

---

[3]Williams testified in the grand jury before he made the purchase of crack from Wilkerson on July 8, 1997.

[4]The redacted testimony, moreover, was not material to the case against Wilkerson and therefore the government did not expect that it would constitute Jencks Act material.  18 U.S.C. §3500(b)(requiring the government to produce, after direct examination, witness statements that relate to the subject matter as to which the witness testified).  Wilkerson, of course, knew that the grand jury transcript he received prior to trial had been redacted.

> Q:    Well, any, yes, I sold one time before,
>        like say eight years ago, no not even,
>        yeah, eight years ago one time.  I did
>        do it one time just to see what it was
>        like, and I never did it again after
>        that.

In addition, the disclosed portion included substantial testimony concerning his familiarity with the activities of the Castlegate gang, whose membership and structure were apparently ill-defined.  For example, Williams was asked how many people he knew to be members of the Castlegate gang.  He replied, "there's lots of people from Castlegate Street gang, but it's only seven, like seven guys that's really running the show that's been there for a long time, and a lot of other younger ones just coming up." When asked why he referred to them as a gang, Williams stated that "if something happens to one of them, they all will go and do something about it."

During his testimony at Wilkerson's trial on October 26, 1999, Williams was asked the following questions and gave the following responses:

> Q.    Do you know of a group – were you a member of
>        a group known as the "Franklin Hill Giants"?
> A.    Yes.
> Q.    And that group was located where?
> A.    In Franklin Hill.
> Q.    And in connection with the - your membership
>        in the Franklin Hill Giants, did you sell
>        drugs?
> A.    Just marijuana.

The questions then returned to Williams's prior drug

dealing; there was no attempt to follow up on the issue of
Williams's relationship with the Franklin Hill Giants gang.

In December 2000, in connection with United States v. Clyde
Tse, 99-10382-GAO, the government released the January 30, 1997
grand jury testimony of Williams, without redactions, to another
defense attorney, in connection with Williams's anticipated
testimony in that trial.  In the redacted portion of the grand
jury testimony, Williams testified that most of the members of
the Franklin Hill gang live in and around the project and that
Williams grew up in Franklin Hill.  He testified that he knew a
lot of people in those projects who deal drugs and the location
of four or five drug houses.  When asked specifically if he was a
member of the Franklin Hill Giants gang, Williams replied no.
Williams went on to explain that different groups controlled
different parts of the housing project, but he described it as a
single generic gang of 200-300 members.  Williams frequently
observed and spoke to the people he identified as the leaders of
the gang.

Wilkerson claims now, as he did previously in this Court and
on appeal, that the failure of the government to disclose the
redacted portion of Williams's grand jury testimony violated
Brady and the Jencks Act.  Wilkerson argues that the government
was obligated to disclose the redacted grand jury testimony when
on cross-examination, Williams testified that he was a member of

the Franklin Hill Giants.  Wilkerson argues that the redacted
testimony impeached Williams in two respects.  First, he claims,
it "could have been shown" that Williams "lied to the Grand Jury
in order to insulate himself from the activities of the Franklin
Hill Giants."   Second, Wilkerson argues, Williams's "character
and credibility would have been further eroded by his knowledge
of and implicit involvement in crimes committed by members of the
Franklin Hill Giants."

     These arguments fail to establish reasons for doubting or
upsetting the verdict.  First, a comparison of Williams's grand
jury and trial testimony does not establish that he lied before
the grand jury.  The questions to Williams at trial on this point
were compound and ambiguous.  It is possible that, at trial,
Williams meant only to testify that he was aware of the Franklin
Hill Giants and that he previously sold drugs.  Second, the grand
jury testimony makes clear that Williams's definition of gang
membership was vague and imprecise and that Williams did not
shrink from acknowledging that he was very close to people he
considered to be members of the Franklin Hill Giants. Third,
Wilkerson had no motive to intentionally testify falsely in grand
jury.  Wilkerson's claim that Williams lied to the grand jury to
insulate himself from the criminal activities of the gang is
speculative and is in fact contradicted by the record.  At the
time of his grand jury testimony, Williams was cooperating with

the DEA in several gang investigations and was being paid.  He
grew up in the Franklin Hill Housing Project and he testified in
detail about his knowledge about criminal activity there.  There
is simply no evidence or any common sense reason why in this
setting Williams would lie about whether or not he was a member
of the gang.  Nor did the concept of gang membership appear to be
of any particular significance to Williams.

In short, Wilkerson has never demonstrated that Williams
perjured himself in grand jury and he offers no new evidence
here.  Where the newly-discovered evidence is the existence of
allegedly perjured testimony, the defendant must first
demonstrate that perjury was in fact committed.  Conley, 249 F.3d
at 47; *citing* United States v. Torres, 128 F.3d 38, 49 (2nd Cir.
1997).  Here, Wilkerson has made no such showing, as it is at
least equally plausible that Williams's inconsistent answers
about gang membership were due to his inattention, confusion, or
imprecision.[5]

More importantly, Wilkerson has not demonstrated how he was
prejudiced by the grand jury testimony.  At trial, Willaims said
he was a member of the Franklin Hills Giants.  This testimony
provided ample impeachment material for Wilkerson.  Moreover, the

_____

[5]  In closing argument, the government described Williams
variously as someone who did not want to be there, fearful or
nervous, and someone who had trouble both remembering details and
understanding questions. [Tr. 556].

existence and membership of that gang had no bearing on the case
against Wilkerson and was completely collateral, as evidenced by
defense counsel's decision not to explore the point further or
even mention the point in closing argument. [Tr. 584-605].[6]

In sum, the alleged inconsistency is immaterial and does not
undermine the jury's verdict. <u>United States v. Shelton</u>, 588 F.2d
1242, 1248 (7th Cir. 1978)("Impeachment evidence, even that which
tends to further undermine the credibility of the key Government
witness whose credibility has already been shaken due to
extensive cross-examination, does not create a reasonable doubt
that did not otherwise exist where that evidence is cumulative or
collateral."), *quoted in* <u>United States v. Sanchez</u>, 917 F.2d 607,
618-19 (1st Cir. 1990); <u>United States v. Gambino</u>, 59 F.3d 353,
366 (2nd Cir. 1995) "Nondisclosure of cumulative evidence tending
only to further impeach a witness' general credibility is not
grounds for granting a Rule 33 motion.").

*Departure*

Wilkerson argues that the Court erred in concluding that it
lacked the authority to depart on the ground of Wilkerson's
family circumstances.  As set out above,  although the court
found that it lacked the authority to depart on the ground of

---

[6]To the extent Wilkerson might be thought to argue that
having engaged Williams on a collateral matter, he could then
have been impeached with an inconsistent statement, this would
only have provided Williams the opportunity to explain the
apparent inconsistency.

family circumstances, it did depart from 140 months to 120 months

on the ground that Wilkerson's criminal history score overstated

the seriousness of his prior criminal conduct. It is indisputable

that the district court departed downward as far as legally

authorized, to a 120-month term of imprisonment, the statutory

mandatory minimum.   21 U.S.C. §841 (a)(1) and (b)(1)(B); 21

U.S.C. §851(a) and (e).   Wilkerson still does not challenge the

applicability of that statutory mandatory minimum sentence.

Thus, as a matter of law, the Court could impose a sentence no

lower than 120 months, and Wilkerson's claim that the Court

lacked authority to depart for family circumstances is,

therefore, entirely academic.   *Cf.*   United States v. Ahlers, 2002

WL 31119925, *7 (1st Cir. September 30, 2002)("Congress chose to

enact statutory minimum sentences and allow only one way out:

cooperation with law enforcement.").

    Moreover, Wilkerson's sentence was dictated by the

applicable statutory minimum, not the guidelines, and Wilkerson

does not contest the applicability of that mandatory minimum.   As

a result, Wilkerson's sentence was neither imposed in violation

of the law, nor imposed as a result of an incorrect application

of the guidelines.

**Conclusion**

Wilkerson's claims should be summarily rejected.


Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Theodore B. Heinrich
_____
THEODORE B. HEINRICH
Assistant U.S. Attorney


CERTIFICATE OF SERVICE


This is to certify that I have this day served upon below
listed individual a copy of the foregoing document by depositing
in the United States mail a copy of same in an envelope bearing
sufficient postage for delivery:

Charles Wilkerson
Prisoner No. 22166-038
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

This 1st day of June, 2005

/s/ Theodore B. Heinrich
THEODORE B. HEINRICH
Assistant U.S. Attorney

17